UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DARRYL ROUSE,

    Defendant,

and

UPS,
    Garnishee.
_____/

Case Number: 97-CV-75610

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT

Now before the Court is defendant Darryl Rouse's ("Defendant") Motion to Set Aside Clerk's Entry of Default Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6). For the following reasons, the Court DENIES Defendant's Motion.

**I.    BACKGROUND**

This matter involves the nonpayment of a Guaranteed Student Loan Promissory Note ("Note") in the amount of $2,625.00, which was originally issued by Citibank and guaranteed by the United States of America ("Plaintiff"). (Dkt. No. 22 Ex. 2, Certificate of Indebtedness). The Note apparently was executed by Defendant on January 1, 1998 and lists his social security number. (*Id.*) The Note also lists Defendant's address as 1038 Marston, Detroit, Michigan 48211. (*Id.*)

According to the Certificate of Indebtedness, Defendant defaulted on the obligation on

February 1, 1989. (Dkt. No. 22, Ex. 2, Certificate of Indebtedness). As of April 24, 1997, the total amount due and owing to the United States ("Plaintiff") was $4,512.92, which included $174.21 of interest accrued to Citibank, $1,674.33 of interest accrued to the United States, and $39.38 in administrative and collection costs. (*Id*.)

On November 12, 1997, the United States filed the instant action against Defendant, seeking to collect the amounts due under the Note. On November 21, 1997, a summons and complaint were served upon someone, who signed Defendant's name on the domestic return receipt. (Dkt. Nos. 2 & 22 Ex. 3, Return Receipt).

On March 25, 1998, the Clerk of the Court for this Court entered a default judgment in the amount of $2,799.21—consisting of the $2,625 in original principal and $174.21 in original interest—in favor of the United States and against Defendant for a total amount due of that date of $5,267.15. (Dkt. No. 7).

On or about January 12, 2009, Plaintiff's counsel sent a letter to Defendant at 7296 St. Marys Street, Detroit, MI 48228. The letter stated that the current amount owed was $8,909.40. Among other things, it informed Defendant that "the U.S. Department of Justice ha[d] requested that [the] firm proceed with legal action regarding your past due account[,]" and "[t]his communication is from a debt collector attempting to collect a debt[.]" (Dkt. No. 15 Ex. 3, 01/12/09 Letter). It further stated that "[w]e will assume that the above referenced debt is valid, unless you dispute the validity of this debt, or any portion thereof, within thirty days after your receipt of this letter." (*Id*.)

On March 2, 2009, the government filed an application for writ of continuing garnishment. (Dkt. No. 9). The same day, the Clerk of the Court issued a writ of continuing garnishment as to UPS and a Clerk's Notice of Garnishment. (Dkt. No. 14).

On or about March 7, 2009, the law firm of Powers, Chapman, DeAgostino, Meyers & Milia, a provider of pre-paid legal services, wrote to Plaintiff's counsel on behalf of Defendant. (Dkt. No. 13 at 9–11, 03/07/09 Letter). Significantly, the letter notes:

> [Defendant] advises he did not attend an educational program or take out a student loan for that purpose. He does advise, however, that while he was employed at Ford Motor Company in 1987-1988, someone stole his wallet, and he never recovered it. He states also that the signer of the promissory note lists [Defendant's] grandmother's address [1038 Marston, Detroit MI 48211] as the signer's residence, and that he has never resided at that address.
>
> . . .
>
> [The loan] was taken out in [Defendant's] name by someone other than him, and he had no inkling of its existence before receiving your initial communication.

(*Id*.)

On March 9, 2009 and then again on March 16, 2009, Defendant, proceeding *in pro per*, filed motions against the writ of continuing garnishment. (Dkt. Nos. 11 & 16).

This Court then referred Defendant's motion to Magistrate Judge Komives on March 31, 2009. Magistrate Judge Komives promptly issued an Opinion and Order Denying Defendant's Motion Against Garnishment. (Dkt. No. 20).

The Court now addresses Defendant's Motion to Set Aside the Clerk's Entry of Default Judgment Pursuant to Rule 60(b)(6).

## II.   ANALYSIS

### A.   Standard of Review

Initially, the Court notes that Defendant is unrepresented by counsel. Therefore, it will not hold his pleadings and arguments to the same standard as practicing attorney, and instead, they will be given a liberal construction. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citing

3

*Haines v. Kerner*, 404 U.S. 519, 520–21(1972)); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (noting that *pro se* pleadings are held to "an especially liberal standard").

Rule 55(c) of the Federal Rules of Civil Procedure provides that a judgment by default may be set aside in accordance with Rule 60(b).   In reviewing a motion for relief under Rule 60(b), the court may not consider the underlying strength of the plaintiff's claim. *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998).  Instead, the court considers the general standards governing a Rule 60(b) motion along with three equitable factors: "'(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced.'"  *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. Ohio 2006) (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)).

"[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (internal quotation marks omitted).  "This is especially true in an application of subsection (6) of Rule 60(b), which applies 'only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule.'" *Id*. (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)).  "Courts . . . must apply subsection (b)(6) only as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Olle*, 910 F.2d at 365 (internal quotation marks omitted). "The 'something more' . . . must include unusual and extreme situations where principles of equity mandate relief." *Id*.

In spite of the strict mandate of Rule 60(b), and especially subsection (6), "the competing policy consideration that values the disposition of cases on their merits dictates that the court 'should

4

. . . construe[] all ambiguous or disputed facts in the light most favorable to the defendant[].'" *Burrell,* 434 F.3d at 831 (quoting *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) (reversing the denial of relief from a default judgment because the defendant had a credible explanation for its delay in filing an answer)).

### B.      Setting Aside the Default Judgment

#### 1.      Culpable Conduct Leading to the Default

The first factor is whether Defendant's culpable conduct led to the default. In the instant action, Defendant claims that he was not aware of the default judgment against him. In response, Defendant has provided the Court with, among other things, a copy of the signed return receipt dated November 21, 1997. Even keeping in mind that Defendant is without counsel and construing any ambiguous or disputed facts in the light most favorable in his favor, the Court finds that this first factor weighs heavily in favor of upholding the default judgment.

First, it is worth noting that while Defendant insists that he was not served, he does not specifically dispute the authenticity of this document. Even if he had argued that he did not sign this document, as he does with the Note, the Court cannot find Defendant's argument credible. The signature of the return receipt is identical to the signature on the unrelated documents that the Defendant provided to the Court. (See Dkt. No. 13 at 6–7, H&R BLOCK® Guarantee Certificate & Sam's Club® Receipt). In addition, any such argument that his signature was forged on the return receipt is belied by the fact that service was sent nearly a decade after the Note was executed. Therefore, any alleged deceit perpetrated at the expense of Defendant would have had to have continued for a considerable length of time—nearly ten years.

5

### 2. The Existence of a Meritorious Defense

The second factor is whether the defendant has a meritorious defense. As he did with the summons, Defendant asserts that he was not aware of the Note. Specifically, he asserts that he did not attend an educational program or take out a student loan for that purpose; that his wallet was stolen around the time the Note was executed; that the address listed on the Note was his grandmother's address; and that he never resided at that address. In support of his argument, Defendant provided the Court with other documents containing his signature in an attempt to show that his signature was forged on the Note. As with Defendant's argument regarding the forged return receipt, Defendant's argument is without merit. Just like the signature on the return receipt, the signature on the Note matches the signature on the documents provided by Defendant. Additionally, Defendant has not provided the Court with any evidence whatsoever corroborating his theory that someone forged his signature on the Note and then used his grandmother's address to collect the funds.

### 3. Prejudice to the Plaintiff

Plaintiff guaranteed the Note on the behalf of Defendant. Whether or not Defendant actually signed the Note, though the evidence shows that he did, Plaintiff has not received any of the $2,799.21 it paid to Citigroup as a result of its guarantee. If the Court sets aside the default judgment, then Plaintiff will be prejudiced by having to wait even longer to be repaid for the amounts it guaranteed roughly twenty years ago. Therefore, the third factor weighs heavily in favor of Plaintiff.

Accordingly, the Court finds that all of the factors weigh strongly in favor of upholding the Clerk of the Court's entry of default judgment.

### III.     CONCLUSION

For the reasons stated, the Court DENIES Defendant's Motion to Set Aside the Clerks Entry of Default Judgment (Dkt. No. 21).

**SO ORDERED**.

                                                                        S/Paul D. Borman                                                    
                                                                        PAUL D. BORMAN
                                                                        UNITED STATES DISTRICT JUDGE

Dated:  April 30, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 30, 2009.

                                                                        S/Denise Goodine                                                    
                                                                        Case Manager